IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RUSSELL P. STOUT, JR., | § | |
| | § | |
| Plaintiff, | § | 1:18-CV-654-LY-SH |
| | § | |
| v. | § | |
| | § | |
| DALE GREMILLION, RYAN COLLINS, | § | |
| MICHIGAN MUTUAL, INC. and | § | |
| SAVANT VENTURE, INC., *a/k/a* | § | |
| SAVANT VENTURES, LLC, | § | |
| | § | |
| Defendants. | § | |

# REPORT AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion to Dismiss Defendants' Counterclaims (Dkt. No. 26), Defendants' Response (Dkt. No. 30), and Plaintiff's Reply (Dkt. No. 34). The undersigned submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.

## I. BACKGROUND

The undersigned first summarizes Stout's claims before addressing Collins' and Savant Ventures' counterclaims, which are the subject of the motion to dismiss.

**A. Stout's Claims**

In his Third Amended Complaint ("TAC"),[1] Plaintiff Russell P. Stout, Jr. ("Stout") alleges that he formed a joint enterprise "or in the alternative a partnership" with Defendants Dale

---

[1] Stout filed his Original Petition ("Original Complaint") in the 250th Judicial District Court of Travis County, Texas. (Dkt. No. 1-2, at 3–12). He filed a First Amended Petition (or "Amended Complaint") on

1

Gremillion ("Gremillion") and Ryan Collins ("Collins") when they formed a business called Lone Star Financing ("Lone Star" or "the Company") approximately eight years ago. (TAC, Dkt. 11 ¶ 6). Lone Star generated leads for potential customers seeking mortgage financing and received commissions from mortgage companies for referrals. (*Id.* ¶ 7). Stout and Gremillion served as loan officers. (*Id.* ¶ 6). According to Stout, he and Gremillion worked with Collins to create and develop the website LoneStarFinancing.com for their company. (*Id.*). "The website was developed and maintained by Collins for the exclusive use of Gremillion and Stout."[2] (*Id.*) Stout and Gremillion "agreed to evenly split the leads and the income generated from the website on a 50/50% basis and to work together to close as many loans as possible." (*Id.* ¶ 8). They did so successfully for about eight years. (*Id.*). Stout and Gremillion paid Collins together from their revenue and earnings for maintaining the LoneStarFinancing.com website. (*Id.* ¶¶ 7, 10). Lone Star served different mortgage companies at different times. When Stout, Gremillion, and Collins "moved to another mortgage company as part of the Lone Star Financing partnership or joint enterprise," they brought their own team of support staff and continued to operate as an independent partnership. (*Id.* ¶ 10).

Stout alleges that Gremillion began concealing bookkeeping and excluding Stout from sharing commissions by diverting loans to his wife, another loan officer. (*Id.* ¶¶ 10-13). In 2018, both Stout and Gremillion left to work for Michigan Mutual, Inc. ("Michigan Mutual").

---

July 31, 2018. (*Id.* at 25–32). Defendant Dale Gremillion removed to this Court on August 2, 2019. (Not. Removal, Dkt. No. 1). After removal, Stout filed a Third Amended Complaint (Dkt. No. 11). The record indicates that this is Stout's third complaint and his second *amended* complaint. However, all parties refer to this filing as a "Third Amended Complaint," so the Court will use the same title to avoid confusion.

[2] Stout alleges that, "In the alternative, Collins was the original owner or developer of the website, but transferred his interest to the joint enterprise or partnership by granting it an exclusive license." (*Id.* ¶ 6 (citing 17 U.S.C. 204(a))).

(*Id.* ¶ 15). Stout alleges that "[w]hen they moved to Mutual Mortgage,[3] Gremillion and Stout took with them the LoneStarFinancing.com website." (*Id.*). Gremillion and Collins "unilaterally and without advance warning, approval or compensation, shut off all of Stout's access to leads from that website." (*Id.*). "Gremillion began transferring leads generated from the website and potential customers to Michigan Mutual." (*Id.*). Stout alleges that Gremillion "took for himself 100% of all the leads generated from that website and 100% of all commissions [and] income . . . in direct contravention of the agreement he had with Stout to split leads and commissions or income on a 50/50% basis." (*Id.*). Stout alleges that Gremillion and Collins never compensated him. (*Id.*). Stout alleges that Michigan Mutual is now receiving leads, revenue, and earnings that rightly belong to him. (*Id.* ¶ 17).

Based on these allegations, Stout asserts twelve causes of action. Against all defendants, he asserts claims of conversion, money had and received, unjust enrichment, violation of the Theft Liability Act, quantum meruit, and intentional infliction of emotional distress. (*Id.* ¶¶ 25-26, 31-32, 36-37, 39). Against Collins and Gremillion, Stout asserts claims of breach of contract, breach of warranty, fraud, breach of fiduciary duty, and "one or more torts" while acting within the scope of the alleged joint enterprise. (*Id.* ¶¶ 27-28, 30, 33, 38, 40). Against Michigan Mutual, he asserts a tortious interference claim. (*Id.* ¶ 29). Stout also lists Savant Ventures, Inc., d/b/a/ Savant Ventures, LLC ("Savant") as a defendant does not assert any claims against Savant. (*Id.* ¶¶ 5, 24). Stout advises that he has added Savant as a defendant because he "has been advised that [Savant] claims ownership and/or copyright as to the website LoneStarFinancing.com," making Savant an indispensable party to this suit. (*Id.* ¶ 24).

---

[3] The undersigned construes Stout's reference to "Mutual Mortgage" as a clerical error and an intended reference to Michigan Mutual.

## B. Collins and Savant Ventures' Counterclaims

Collins and Savant Ventures (together, "Counterclaimants") filed counterclaims against Stout on March 4, 2019, alleging a different set of facts. (Dkt. No. 24). They allege that Collins incorporated Savant as a limited liability company "at least as early as April 18, 2007." (*Id.* ¶ 10). Collins is the sole owner and has sole control of Savant Ventures. (*Id.* ¶ 11). Savant registered the domain name "lonestarfinancing.com" ("the Domain Name") on April 18, 2007. (*Id.* ¶ 12). At the same time, Savant created the Lone Star Financing word trademark ("the Word Mark") and design trademark ("the Design Mark" or "Logo"). (*Id.* ¶ 13). Since at least June 12, 2007, Savant has continuously used the Word Mark and the Design Mark in interstate commerce in association with "Lead Generating Services." (*Id.* ¶¶ 14-16). Those services include generating leads to mortgage companies for entities that needed loans, selling those leads to mortgage companies, and creating content for the Lone Star Financing website. (*Id.* ¶ 15).

Collins and Gremillion met in 2011. (*Id.* ¶ 19). Counterclaimants allege that in 2011, Savant and Gremillion entered into a business arrangement with Gremillion's then-employer, a mortgage company, through which Savant licensed the Lone Star Financing Website to the mortgage company, which would buy the leads from Savant. (*Id*). When Gremillion moved to work for another mortgage company, they terminated that license and Savant entered a new license agreement with the new employer. (*Id.* ¶ 20). At some point in 2011, Stout became employed with the same company. (*Id.* ¶ 21). Counterclaimants allege that "by this time," Savant had already created and used the Lone Star Financing Word Mark and Design Mark for Lead Generating Services and created significant content on the Website. (*Id.*). Collins and Savant Ventures allege that there is no written document assigning any interest in the Website, Word

Mark, or Design Mark to Stout himself or the alleged business partnership or joint enterprise. (*Id.* ¶ 44).

Counterclaimants allege that when Stout began working with Gremillion, both were W-2 employees who received commissions from their employer mortgage company. (*Id.* ¶ 22). They further allege that the terms of any commissions were between Stout and the mortgage company. (*Id.* ¶ 23). Collins and Savant "did not" and "could not" receive any portion of the commissions from Stout and Gremillion. (*Id.* ¶ 24). Savant was paid by the licensor mortgage company for use of the website and associated marks. (*Id.* ¶ 25). Counterclaimants state that, "[f]rom time-to-time [sic]" from 2011 to 2018, Stout and Gremillion would move to a new mortgage company at the same time, employed as W-2 employees for each. (*Id.* ¶ 25).

In early 2018, Stout and Gremillion both worked for Open Mortgage, which was "permitted to do business"[4] under the Lone Star Financing Word Mark. (*Id.* ¶¶ 27-28). Counterclaimants allege Stout was aware that Savant controlled the Lone Star Financing Website (*id.* ¶ 33), that Savant owned the copyright for the content on the Website (*id.* ¶ 34), that Savant owned the Word Mark and Design Mark (*id.* ¶ 35), that Savant licensed the use of the marks and the Website to certain mortgage company employers (*id.* ¶ 36), and that in 2018, Open Mortgage was using the marks through its agreement with Savant (*id.* ¶ 35).

At some time in 2018, there was a change in employment between Stout and Gremillion "such that they no longer would be employed by the same employer." (*Id.* ¶ 37). From subsequent allegations, the undersigned construes this to mean that at some time in 2018, Gremillion left Open Mortgage to work for Michigan Mutual Inc., while Stout remained at Open Mortgage. (*See id.* ¶ 38). Counterclaimants allege that Stout and Gremillion each approached

---

[4] Counterclaimants do not specifically allege whether the Open Mortgage and Savant had license agreement or some other arrangement. (*See id.* ¶ 28).

Collins and Savant Ventures to provide services to their respective employers. (*Id.* ¶ 38). Collins chose Michigan Mutual. (*Id.* ¶ 39). Collins and Savant Ventures terminated their license with Open Mortgage and entered into an arrangement granting Michigan Mutual "rights in and to the use of" the Lone Star Financing Website, the Lone Star Word Mark, and the Lone Star Design Mark. (*Id.* ¶¶ 40-41).

In June 2018, Stout "began asserting" rights to the Lone Star website, Word Mark, and Design Mark, and that some form of business relationship existed between himself, Collins, and Gremillion. (*Id.* ¶ 42). At Stout's request, Collins, Gremillion, and Open Mortgage attended mediation to attempt to resolve the dispute. (*Id.* ¶ 48). After two rounds of mediation, the parties settled all disputes with Open Mortgage. (*Id.* ¶ 51). Stout filed this action in Travis County Court on July 27, 2018, and Gremillion timely removed to this court. (Orig. Compl., Dkt. No. 1-2, at 3–12; Not. Removal, Dkt. No. 1).

Collins and Savant now counterclaim that Stout has tortiously interfered with their actual and potential business relationship with Michigan Mutual (*id.* ¶¶ 99-115). They also seek declaratory judgment on five issues: (1) a declaration that Stout did not author any of the content appearing on the Lone Star Financing Website (*id.* ¶¶ 62-68), (2) a declaration of copyright ownership that Savant Ventures owns the copyrighted materials appearing on the Lone Star Financing Website (*id.* ¶¶ 69-75), (3) a declaration of trademark ownership that Savant Ventures is the owner of the Lone Star Financing Word Mark and Lone Star Financing Design Mark (*id.* ¶¶ 76-84), (4) a declaration that there is no partnership and/or joint enterprise relationship among Stout, Gremillion, and Collins (*id.* ¶¶ 85-91), and (5) a declaration that all of Stout's claims set forth in the Third Amended Complaint fail (*id.* ¶¶ 92-98). They also seek attorneys' fees. (*Id.* ¶¶ 116-120). Stout moves to dismiss all counterclaims for failure to state a claim. (Mot., Dkt. No. 26).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III. DISCUSSION

Stout argues that the counterclaims for declaratory relief should be dismissed because they duplicate Stout's existing claims. He argues that the tortious interference claims should be dismissed because the counterclaims contain no factual allegations. Finally, Stout argues that

Counterclaimants are not entitled to attorneys' fees under either the Federal Declaratory Judgment Act or the Texas Uniform Declaratory Judgment Act.[5]

**A. Declaratory Judgment Claims**

   **1. Legal Standard**

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201. The Act does not create new substantive rights. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)). It is "only 'procedural.'" *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "By the Declaratory Judgment Act, Congress . . . created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "Consistent with the nonobligatory nature of the remedy," a district court may dismiss a claim for declaratory judgment at its discretion if the court determines "that a declaratory judgment will serve no useful purpose." *Id.*

"[A]lthough a district court may not dismiss a request for declaratory judgment relief 'on the basis of whim or personal disinclination,' the court may consider a variety of factors in determining whether to decide a declaratory judgment suit." *Rowan Cos. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989) (quoting *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir. 1981)). Courts in the Fifth Circuit typically consider a three-step inquiry: whether the action is justiciable; whether the district court has "authority to grant the relief"; and "how to exercise [the court's] broad discretion to decide or dismiss a declaratory judgment action." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000); *Bowman*, 2018 WL 1115202, at *3.

---

[5] Stout's other ground for dismissal—that the counterclaims were untimely—is now moot. *See* Order, Dkt. 29.

Stout moves to dismiss the declaratory judgment counterclaims on the third ground only. Because neither party disputes that the action is justiciable and that the court otherwise has authority to grant the requested relief, the undersigned considers dismissal based only on the third factor, the district court's discretion.

"District courts in the Fifth Circuit regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit." *Bowman v. Bella Estancias, LLC*, No. 3:17-CV-0091-KC, 2018 WL 1115202, at *3 (W.D. Tex. Feb. 15, 2018) (citing *City of Waco v. Kleinfelder Cent., Inc.*, No. 6:15–CV–310 RP, 2016 WL 5854290, at *9 (W.D. Tex. Oct. 6, 2016); *Edwards v. U.S. Bank Nat'l Ass'n*, No. 6:15–CV–02535, 2016 WL 4574585, at *6 (W.D. La. June 28, 2016), *report and recommendation adopted*, No. 6:15–CV–02535, 2016 WL 4626252 (W.D. La. Sept. 1, 2016); *Flanagan v. Chesapeake Expl., LLC*, No. 3:15–CV–0222–B, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015)). The Fifth Circuit has found an abuse of discretion and reversed a grant of declaratory relief where "[t]he declaratory judgment does not declare any significant rights not already at issue in the contract dispute." *Madry v. Fina Oil & Chem. Co.*, 44 F.3d 1004, 1994 WL 733494, at *2 (5th Cir. 1994) (unpublished). "If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted." *Bowman*, 2018 WL 1115202, at *3 (citations omitted).

A counterclaim for declaratory judgment is duplicative where the declaration would address the merit of the plaintiff's claim. For example, in *Bowman*, the plaintiff filed suit alleging violations of the Fair Housing Act under Title VII of the Civil Rights Act ("FHA"). *Bowman*, 2018 WL 1115202, at *1. The defendant filed counterclaims seeking declaratory judgment regarding (1) whether the property at issue was subject to the FHA; (2) fact issues regarding the construction of the property; (3) whether the plaintiff complied with the FHA's "reporting and

9

complaint requirements"; and (4) whether the defendant was entitled to "safe harbor provisions." *Id.* at *3. The district court dismissed the declaratory judgment counterclaims under Rule 12(b)(6), ruling that the counterclaims sought "resolution of matters already before the court" through the plaintiff's FHA claim. *Id.* at *3-4 (citations omitted). Similarly, in *City of Waco*, the City filed an action for breach of contract and the defendant filed a counterclaim for declaratory judgment stating that (1) the defendant was not party to the disputed agreement and (2) the agreement barred the damages sought. *City of Waco*, 2016 WL 5854290, at *2. The district court dismissed the counterclaim for declaratory judgment as "unnecessary because Plaintiff has already placed the issues relevant to Defendants counterclaim before the Court." *City of Waco*, 2016 WL 5854290, at *9 (citations omitted).[6]

## 2. Discussion

Stout argues that all of the declaratory judgment counterclaims duplicate Stout's claims and should be dismissed. (Mot. Dismiss, Dkt. 26, at 5-12). Stout fails to specify which of his claims are duplicated. Instead, he emphasizes that the counterclaims repeatedly refer to "Stout's pleadings" and "expressly say [each] claim is 'in view of Counterclaim-Defendant Stout's pleadings.'" (*Id.* at 7-12 (citing Counterclaims, Dkt. 24 ¶¶ 67, 74, 83, 90, 97).

---

[6] Stout cites similar "mirror image" cases from neighboring districts where courts have dismissed counterclaims for declaratory relief that would address the merits of a plaintiff's claim. (*See* Mot. Dismiss, Dkt. 26, at 5-6 (citing *Merritt Hawkins & Assocs., LLC v. Gresham*, No. 3:13-CV-00312-P, 2014 WL 685557, at *1; *Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007); *Sony BMG Music Entm't v. Crain*, No. 1:06-CV-567-TH, 2007 WL 9725180, at *2 (E.D. Tex. Sept. 20, 2007)). In *Merritt*, the district court dismissed counterclaims for declaratory judgment where the plaintiff filed an action for breach of a contract containing non-competition, non-disclosure, and non-interference provisions and the defendant's counterclaims asked the court to "declare the non-competition, nondisclosure, and non-interference provisions in Defendant's employment agreement to be unenforceable." *Merritt Hawkins*, 2014 WL 685557, at *1. In *Xtria*, the court dismissed a plaintiff's declaratory judgment claim where the plaintiff had also asserted a breach of contract claim "to the same effect." *Xtria*, 2007 WL 1791252, at *3. Similarly in *Sony*, the court dismissed a counterclaim where the defendant responded to the plaintiff's action for copyright infringement by seeking declaratory judgment "that she did not infringe on plaintiffs' copyrights." *Sony*, 2007 WL 9725180, at *1 (E.D. Tex. Sept. 20, 2007).

A comparison of the Third Amended Complaint and the Counterclaims indicates that two of Collins and Savants' counterclaims duplicate Stout's claims. In the Third Amended Complaint, Stout asserts claims against all Defendants for conversion, money had and received, unjust enrichment, violation of the Theft Liability Act, quantum meruit, and intentional infliction of emotional distress. (TAC, Dkt. 11 ¶¶ 25-26, 31-32, 36-37, 39). Against Collins and Gremillion, Stout asserts claims of breach of contract, breach of warranty, fraud, breach of fiduciary duty, and "one or more torts" while acting within the scope of the alleged joint enterprise. (*Id.* ¶¶ 27-28, 30, 33, 38, 40). Against Michigan Mutual, he asserts a tortious interference claim. (*Id.* ¶ 29). Stout also lists Savant Ventures, Inc., d/b/a/ Savant Ventures, LLC ("Savant") as a defendant but does not assert any claims against Savant. (*Id.* ¶¶ 5, 24). Stout advises that he added Savant as a defendant because he "has been advised that [Savant] claims ownership and/or copyright as to the website LoneStarFinancing.com," making Savant an indispensable party to this suit. (*Id.* ¶ 24).

Collins and Savant assert five counterclaims for declaratory judgment: (1) a declaration that Stout did not author any of the content appearing on the Lone Star Financing Website (*id.* ¶¶ 62-68), (2) a declaration of copyright ownership that Savant Ventures owns the copyrighted materials appearing on the Lone Star Financing Website (*id.* ¶¶ 69-75), (3) a declaration of trademark ownership that Savant Ventures is the owner of the Lone Star Financing Word Mark and Lone Star Financing Design Mark (*id.* ¶¶ 76-84), (4) a declaration that there is no partnership and/or joint enterprise relationship among Stout, Gremillion, and Collins, (*id.* ¶¶ 85-91), and (5) a declaration that all of Stout's claims set forth in the Third Amended Complaint fail (*id.* ¶¶ 92-98).

### a. Intellectual Property Counterclaims (Counterclaims 1-3)

The first three counterclaims for declaratory judgment concern the authorship and ownership of the Lone Star Financing Website, Word Mark, and Design Mark. (Counterclaims, Dkt. 24 ¶¶ 62-84). Although some of Stout's affirmative claims raise questions of fact regarding the authorship and ownership of these materials, resolution of Stout's claims will not necessarily resolve Collins and Savant's counterclaims.

First, Counterclaimants seek a declaration that Stout did not author any of the content appearing on the Lone Star Financing Website. (*Id.* ¶¶ 68). None of Stout's affirmative claims will necessarily determine the authorship of the Website, Word Mark, or Design Mark. Stout does not assert an affirmative claim of authorship. Stout's pleadings do not make clear what role he alleges he played in the development of the Website or its content. Stout alleges that:

> Together, they [Stout, Gremillion and Collins] created and developed a website, LoneStarFinancing.com. The website was developed and maintained by Collins for the exclusive use of Gremillion and Stout. In the alternative, Collins was the original owner or developer of the website, but transferred his interest to the joint enterprise or partnership by granting it an exclusive license.

(TAC, Dkt. 11 ¶ 6). Nonetheless, even resolving all inferences in favor of Stout and construing the complaint to allege that he was a joint author of the website, none of Stout's affirmative claims will necessarily determine the authorship of the website.

The same is true for the second and third counterclaims. Collins and Savant seek in Counterclaim 2 a declaration of copyright ownership that Savant Ventures owns the materials protected by copyright appearing on the Lone Star Financing Website (*id.* ¶¶ 69-75), and in Counterclaim 3, a declaration of trademark ownership that Savant Ventures is the owner of the Lone Star Financing Word Mark and Lone Star Financing Design Mark (*id.* ¶¶ 76-84). Stout raises fact questions regarding the ownership of the Website and its content, but resolution of

Stout's claims will not necessarily determine the copyright ownership of the Website or ownership of the Word Mark and Design Mark. Stout does not assert copyright or trademark claims. Stout also does not definitively allege that he owns an interest in the website—he alleges that he had *either* an ownership interest or a license to use the website, claiming that Gremillion and Collins "represented to Plaintiff that . . . Plaintiff was a joint owner of Lone Star Financing and the LoneStarFinancing.com website, and that he would have exclusive use of the website in perpetuity, or alternatively, that he had an exclusive license to use the website." (TAC, Dkt. 11 ¶ 33). Given that Stout does not assert his own copyright or trademark claim, and his disjunctive allegation that he owned *or* merely had a right to use the Website and Marks, judgment on Stout's claims will not necessarily determine the copyright or trademark ownership that Collins and Savant assert in their second and third counterclaims.

Because the first three claims for declaratory judgment would "declare [] significant rights not already at issue" in the dispute, *Madry*, 1994 WL 733494, at *2, they do not duplicate Stout's claims. The undersigned recommends denying dismissal of Counterclaimants' first three counterclaims.

### b. Duplicative Counterclaims (Counterclaims 4-5)

The two remaining counterclaims duplicate Stout's claims. Counterclaimants' fourth request for declaratory relief—that "there is no partnership and/or joint enterprise"—duplicates Stout's claim of "one or more torts while acting within the scope of the alleged joint enterprise" because both raise the legal and factual question of whether a partnership or joint enterprise existed. (*See* TAC, Dkt. 11 ¶ 40; Counterclaims, Dkt. 24 ¶¶ 85-91). "If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted." *Bowman*, 2018 WL 1115202, at

*3. The undersigned recommends granting dismissal of the fourth counterclaim for declaratory relief.

Finally, Counterclaimants' fifth request for declaratory relief— that "all of Counterclaim-Defendant Stout's claims . . . fail"—asks the district court to declare the merit of all of Stout's claims. (Counterclaims, Dkt. 24 ¶ 98). This is a classic mirror image counterclaim for declaratory judgment. The undersigned recommends granting dismissal of this counterclaim as well. *See Bowman*, 2018 WL 1115202, at *3; *Merritt Hawkins*, 2014 WL 685557, at *3.

### B. Tortious Interference Claims (Counterclaims 6-7)

Counterclaimants Collins and Savant assert that Stout has tortiously interfered with their actual and potential business relationship with Michigan Mutual (*id.* ¶¶ 99-115). Stout moves to dismiss these claims because Collins and Savant "offer no facts to support these claims." (Mot. Dismiss, Dkt. 26, at 13). The undersigned agrees.

#### 1. Legal Standard

Under Texas law, tortious interference with an existing business relationship and with a prospective business relationship are two distinct causes of action. *Apani Sw., Inc. v. Coca–Cola Enters., Inc.*, 300 F.3d 620, 634 (5th Cir. 2002). The "essential elements" of tortious interference with an existing business relationship are "(1) unlawful actions undertaken without justification or excuse; (2) with intent to harm; and (3) actual damages." *Id.* (citing *Morris v. Jordan Fin. Corp.*, 564 S.W.2d 180, 184 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.)). For tortious interference with a prospective business relationship, "a claim requires: (1) a reasonable probability that the parties would have entered into a business relationship, (2) an intentional and malicious act by the defendant that prevented the relationship from occurring, with the purpose of harming the plaintiff, (3) the defendant lacked privilege or justification to do the act, and

(4) actual harm or damage resulted from the defendant's interference." *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 403 (5th Cir. 2008) (quoting *Apani*, 300 F.3d at 634).[7]

### 2. Discussion

As pled, Counterclaimants' allegations of tortious interference are almost entirely conclusory and offer no specific facts regarding injury or damages. Regarding their claim of tortious interference with a business relationship, Counterclaimants allege that Michigan Mutual now employs Collins (Counterclaims, Dkt. 24 ¶ 39), and that Michigan Mutual has "rights in and to the use of" the Lone Star Financing Website, the Lone Star Word Mark, and the Lone Star Design Mark through an agreement with Savant Ventures (*id.* ¶¶ 40-41). Counterclaimants also allege that Stout "began asserting" the existence of a joint partnership with Collins and Gremillion and certain rights arising from that alleged relationship. (*Id.* ¶ 42). Beyond this, Counterclaimants offer no specific facts to indicate that Stout interfered with their relationship with Michigan Mutual. Counterclaimants offer only general allegations that "Stout has willfully and intentionally interfered with the relationship;" that "Stout has proximately caused injury" to Collins; that "Stout has also caused actual damages and losses" to Collins; and that "Stout has tortuously [sic] interfered" with Collins' business relationship with Michigan Mutual." (Counterclaims, Dkt. 24 ¶¶ 101-05). In their Response, Counterclaimants point to "a Background section that is about ten pages long and alleges over 50 paragraphs of detailed facts" (Resp., Dkt. 30, at 12), but the Background section does not include any specific facts alleging how Stout impacted Collins' relationship with Michigan Mutual, or the nature or value of the alleged damage to the relationship.

---

[7] Some Texas intermediate appellate courts require a "business relationship," while other require a "contractual relationship." *See Nano-Proprietary*, 537 F.3d at 403 (citing *Robles v. Consol. Graphics, Inc.*, 965 S.W.2d 552, 561 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *Santa Fe Energy Operating Partners, L.P. v. Carrillo*, 948 S.W.2d 780, 784 (Tex. App.—San Antonio 1997, writ denied)).

Counterclaimants' claim of tortious interference with a prospective business relationship is implausible for the same reason. Counterclaimants allege that before Collins and Michigan Mutual entered into a business relationship, Stout "tortuously [sic] interfered with . . . Collins' prospective business relationship with Michigan Mutual"; that "[t]here was a reasonable probability" that Collins and Michigan Mutual "were going to enter into a business relationship"; that "Stout acted with a conscious desire to prevent that relationship from occurring"; that "Stout knew the interference was certain or substantially certain to occur as a result of the conduct"; that "Stout was independently tortious and/or unlawful"; that "the interference proximately caused injury" to Collins, "including because the terms of the relationship were materials [sic] changed in view of . . . Stout's activities"; that "Collins has suffered actual damage and loss as a result of . . . Stout's activities"; and that "Collins is entitled to damages." (*Id.* ¶¶ 107-112).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Because Counterclaimants' tortious interference claims only recite the elements of each cause of action and do not allege any specific facts regarding how Stout's conduct may have impacted Collins' relationship with Michigan Mutual, Collins and Savant have not stated a plausible claim. The undersigned recommends dismissal of these claims without prejudice.

**C. Attorneys' Fees**

Only Counterclaimants' request for attorneys' fees remains. Counterclaimants seek fees under the Texas Uniform Declaratory Judgment Act and the Federal Declaratory Judgment Act. (Counterclaims, Dkt. 24 ¶¶ 116-120 (citing TEX. CIV. PRAC. & REM. CODE § 37.009; 28 U.S.C. § 2202)). Stout argues that Counterclaimants are not entitled to attorneys' fees under either statute. (Mot. Dismiss, Dkt. 26, at 14-17).

Under the Federal Declaratory Judgment Act, "further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. Because the undersigned recommends that three counterclaims for declaratory judgment survive Stout's motion to dismiss, Counterclaimants retain three claims that ultimately may result in a judgment or decree in their favor. Stout has not shown any other reason to dismiss the claim for attorneys' fees at this time. The undersigned recommends denying dismissal of the attorney fee claim under the Federal Declaratory Judgment Act.

The Texas Uniform Declaratory Judgment Act provides: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. While federal courts apply state law to a substantive issue or claim which has its source in state law, "federal law, rather than state law, invariably governs procedural matters in federal courts." *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006) (citing *Motorola Communic'ns & Elec., Inc. v. Dale*, 665 F.2d 771, 774 (5th Cir. 1982)). The Texas Declaratory Judgment Act "is procedural for *Erie* purposes: 'a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law.'" *Camacho*, 445 F.3d at 409 (quoting *Utica Lloyd's of Texas v.*

*Mitchell*, 138 F.3d 208 (5th Cir. 1998)). *Camacho* reached the same conclusion in a federal question case. *See id.* at 413 ("[W]e conclude that the [Texas] DJA is procedural for *Erie* purposes under *Chambers* and its Fifth Circuit progeny."). Because the Texas Declaratory Judgment Act is procedural for *Erie* purposes, federal courts apply federal law instead. Counterclaimants may not rely on the Texas statute to seek attorney fees in this federal action; they may only rely on the Federal Declaratory Judgment Act.

## IV. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Stout's Motion to Dismiss Collins' and Savant Ventures' Counterclaims. (Dkt. No. 26). Specifically, the undersigned recommends that the District Court grant the motion in part and **DISMISS WITHOUT PREJUDICE:**

1. The fourth counterclaim, which seeks a declaration that there is no partnership and/or joint enterprise relationship among Stout, Gremillion, and Collins. (Counterclaims, Dkt. 24 ¶¶ 85-91).

2. The fifth counterclaim, which seek a declaration that all of Stout's claims set forth in the Third Amended Complaint fail. (*id.* ¶¶ 92-98).

3. The sixth counterclaim, for tortious interference with a business relationship. (*Id.* ¶¶ 99-105).

4. The seventh counterclaim, for tortious interference with a prospective business relationship. (*Id.* ¶¶ 106-115).

The undersigned further recommends that the District Court **DISMISS WITH PREJUDICE** the counterclaim for attorneys' fees under the Texas Uniform Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE § 37.009. (*Id.* ¶ 118). The undersigned recommends that the District Court **DENY** the remainder of the relief requested in Stout's Motion to Dismiss Defendants' Counterclaims.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SIGNED** on September 6, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE